UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **THE LEARNING EXPERIENCE CORP. et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**BERKSHIRE HATHAWAY SPECIALTY INSURANCE CO.,**<br><br>Defendant. | No. 2:20-cv-14013 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

Plaintiff The Learning Experience Corporation and several of its wholly owned subsidiaries (collectively, "Plaintiffs") seek coverage from its commercial insurer, Defendant Berkshire Hathaway Specialty Insurance Company ("Berkshire"), for losses sustained during the Covid-19 pandemic. This matter is before the Court on Berkshire's motion to dismiss the Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 43. For the reasons stated below, Berkshire's motion is **GRANTED**.

### I.  BACKGROUND [1]

Plaintiffs own and operate certain childcare centers in New Jersey, where they provide early education and care for children ages six weeks to six years old, and after-school programming for elementary school-aged children.[2] SAC ¶¶ 26-29. When the state of New Jersey, like other state governments throughout the country, issued stay-at-home

---

[1] The Court draws all facts from the Second Amended Complaint ("SAC"), ECF No. 42, and from those documents that are "integral to or explicitly relied upon" therein, such as Plaintiffs' insurance policy. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted).

[2] Plaintiff The Learning Experience Corporation ("TLE") is incorporated in Delaware and has its principal place of business in Florida. SAC ¶ 18. It wholly owns Plaintiffs TLE at Cedar Grove LLC, TT of Wayne LLC, TLE at East Rutherford LLC, TLE at Hackensack LLC, TLE at Paramus LLC, and TT of Ramsey LLC. *Id.* ¶ 29. For purposes of diversity jurisdiction, these unincorporated Plaintiffs assume the Delaware and Florida citizenship of TLE, their sole owner. *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018) ("a limited liability company is a citizen of all the states of its members"). Plaintiffs are therefore completely diverse from Defendant Berkshire, which is incorporated in, and has its principal place of business in, Nebraska. SAC ¶ 24. As the amount in controversy also exceeds $75,000, *id.* ¶¶ 13, 107, the Court is satisfied diversity jurisdiction exists here. *See* 28 U.S.C. § 1332(a).

and business-shutdown orders (generally, the "Closure Orders") throughout 2020 to curtail the spread of Covid-19 and help stymie what would swiftly become a national and global public health crisis, Plaintiffs had to cease or significantly restrict their business operations. *Id.* ¶¶ 68-81, 93 n.3.

To recoup losses in income, Plaintiffs sought to recover under their all-risk commercial property insurance policy (the "Policy") issued by Berkshire. *Id.* ¶ 30. The Policy generally provides that Berkshire "will pay for direct physical loss of or damage to the Covered Property . . . caused by or resulting from any Covered Cause of Loss." SAC, Ex. A, p. 000096, § A.³ The Causes of Loss–Special Form defines Covered Causes of Loss to mean "risks of direct physical loss" unless the loss is otherwise expressly excluded. *Id.* at p. 000122, § A.

The Policy also provides for certain additional coverage for lost business income and extra expenses incurred. Under these coverage provisions, Berkshire will pay for lost "Business Income" and "Extra Expense" incurred during a necessary suspension of business operations. *Id.* at p. 000113, §§ A.1, A.2. The suspension "must be caused by direct physical loss of or damage to" the Covered Properties, and "[t]he loss or damage must be caused by or result from a Covered Cause of Loss." *Id.* In yet another provision, the Policy extends such Business Income and Extra Expense coverage to actions of a "Civil Authority" taken in response to dangerous physical conditions to property other than Plaintiffs' insured property, but that nonetheless prohibit access to Plaintiffs' businesses. *Id.* at p. 000114, § A.5.a. Just as in the other coverage provisions, the "dangerous physical conditions" must result from damage caused by a Covered Cause of Loss. *Id.* at § A.5.a.(2).

Notwithstanding this broad coverage, the Policy expressly contains an "Exclusion of Loss Due to Virus or Bacteria" (the "Virus Exclusion"). The Virus Exclusion states, in relevant part:

> A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that compromise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.
>
> B. [Berkshire] will not pay for loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

---

³ When citing to the Policy, the Court refers to the Bates Stamp pagination generated in the lower-righthand corner of the document. *See* SAC, Ex. A, ECF No. 42-1.

*Id.* at p. 000242, §§ A, B (emphasis added).  Relying on the Virus Exclusion, Berkshire denied Plaintiffs' claims under the Business Income, Extra Expense, and Civil Authority provisions for losses sustained from the Closure Orders.  SAC ¶¶ 11, 202-03.

Plaintiffs now bring this action against Berkshire, alleging it breached the Policy by wrongfully denying coverage for business interruptions and losses caused by the Closure Orders.  Plaintiffs' Second Amended Complaint asserts three claims: breach of contract (Count I), bad faith denial of insurance coverage (Count II), and a claim seeking a declaration of the parties' rights and duties under the Policy (Count III).  SAC ¶¶ 223-37.  Berkshire moves to dismiss the claims on the grounds that the Policy does not cover Plaintiffs' alleged losses absent direct physical loss or damage, and the Virus Exclusion nonetheless bars all coverage.  *See generally* Def. Br., ECF No. 43-1.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In deciding a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotation marks omitted).  The complaint's factual allegations need not be detailed, but they must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  This facial plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.    DISCUSSION

Whether Plaintiffs' losses are covered under the Policy is a question of contract interpretation.  *See Podiatry Foot & Ankle Inst. P.A. v. Hartford Ins. Co. of Midwest*, No. 20-20057, 2021 WL 1326975, at *2 (D.N.J. Apr. 9, 2021) (citing *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC*, 143 A.3d 273, 280 (N.J. 2016)).  Under New Jersey law, the language of an insurance policy is interpreted according to its plain and ordinary meaning.[4]  *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (citing *Ambrosio v. Affordable Auto Rental, Inc.*, 704 A.2d 572, 575 (N.J. 1998)).

---

[4] As neither party has raised a choice-of-law argument, the Court will apply New Jersey law to interpret the Policy.

The Court is bound to enforce clear, unambiguous policy terms as they are written, but any ambiguities in terms of coverage are generally resolved in favor of the insured. *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288-89 (3d Cir. 2004).

As for exclusionary clauses within a policy, such clauses "are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (quoting *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997)). "If the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi v. Chubb Ins. Co.*, 582 A.2d 1257, 1260 (N.J. 1990)).

Here, the Court's analysis begins and ends with the applicability of the Policy's Virus Exclusion to Plaintiffs' claims for coverage. *See T & L Catering, Inc. v. Hanover Ins. Grp., Inc.*, No. 20-07934, 2021 WL 2948425, at *4 (D.N.J. July 14, 2021) (finding it unnecessary to address arguments concerning direct physical loss or Civil Authority coverage where the Virus Exclusion applied and completely barred coverage); *Benamax Ice, LLC v. Merchant Mutual Ins. Co.*, 529 F. Supp. 3d 350, 356 (D.N.J. 2021) (finding same); *Del. Valley Plumbing Supply Inc. v. Merchants Mut. Ins. Co.*, 519 F. Supp. 3d 178, 182 (D.N.J. 2021) (finding same).

Plaintiffs argue that the Virus Exclusion's "*caused by or resulting from* any virus" language is simple causation language that does not address whether coverage is barred if the virus is one part of a multi-causal chain of events. Pls. Opp. at 19, ECF No. 45. In making this argument, Plaintiffs invoke Appleman's Rule, the efficient proximate cause test that New Jersey courts apply "[w]hen there is a conflict as to whether, for coverage purposes, losses should be considered to be 'caused by' an excluded risk or by a covered peril." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019), *aff'd*, 243 A.3d 1248 (N.J. 2021). "Under this test, if an exclusion 'bars coverage for losses *caused by* a particular peril, the exclusion applies *only if* the excluded peril was the efficient proximate cause of the loss.'" *Id.* (quoting *Zurich Am. Ins. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)) (emphasis in original). Where a chain of causation leading to loss includes both a covered cause and an uncovered cause, "the pertinent question is not where in the sequence the alleged cause of loss occurred"—i.e., whether the covered cause *triggered* the sequence of events or *ended* the sequence of events leading to the loss. *T & L Catering, Inc.*, 2021 WL 2948425, at *4 (citing *Franklin Packaging Co. v. Cal. Union Ins. Co.*, 408 A.2d 448, 449 (N.J. Super. Ct. App. Div. 1979)). The pertinent question is what was the *predominant cause* that produced the loss. *Id.*; *see also Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. 20-8676, 2021 WL 1040490, at *5 (D.N.J. Mar. 18, 2021).

Plaintiffs maintain that the Closure Orders proximately and predominantly caused Plaintiffs' losses because they required Plaintiffs to close, or significantly restrict the operations of, their childcare centers, which would have otherwise "continued to operate

4

strongly but for [the Closure Orders]." Pls. Opp. at 22-24, ECF No. 45. The Court disagrees. Courts in this District have overwhelmingly rejected this argument by repeatedly recognizing "that the state Closure Orders are inextricably tied to the Covid-19 virus, and therefore, the predominant and proximate cause of Plaintiff's business-related closures is the Covid-19 virus, not the Closure Orders that were issued in response to the virus." *T & L Catering, Inc.*, 2021 WL 2948425, at *4 (capitalization altered); *see Cedar Run Orthodontics, P.A. v. Sentinel Ins. Co., Ltd.*, No. 20-8156, 2021 WL 5083814, at *3 (D.N.J. Nov. 1, 2021) (stating "[t]here is near unanimous agreement in this district that virus exclusion provisions . . . apply to bar coverage for claims of losses resulting from the COVID-19 pandemic and associated civil authority orders," and collecting cases); *Caterer's in the Park, LLC v. Ohio Sec. Ins. Co.*, No. 20-6867, 2021 WL 4994463, at *2, n.4 (D.N.J. Oct. 26, 2021) (stating that "[t]he weight of authority adopting this position is staggering," and collecting cases); *Del. Valley Plumbing Supply Inc.*, 519 F. Supp. 3d at 183 (stating that "a significant number of courts, both in this Circuit and across the country, have . . . consistently reached the same conclusion" that virus exclusion clauses bar coverage for claims of losses resulting from Covid-19, and collecting cases). There is no compelling reason not to reach that same conclusion here.

The Court therefore finds that Covid-19 was the proximate and predominant cause of Plaintiffs' losses and, as such, Plaintiffs' claims for coverage under the Business Income, Extra Expense, and Civil Authority provisions fall squarely within, and are barred by, the Policy's Virus Exclusion. Plaintiffs' breach of contract claim (Count I) consequently fails to state a claim, and Plaintiffs "are not entitled to a declaration that their losses are covered under the policy" (Count III). *Del. Valley Plumbing Supply Inc.*, 519 F. Supp. 3d at 186. Finally, Plaintiffs' claim for bad faith denial of insurance coverage (Count II) similarly fails, as Berkshire was not obligated to provide coverage where the Policy excluded the cause of Plaintiffs' losses. *See Z Bus. Prototypes LLC v. Twin City Fire Ins. Co.*, No. 20-10075, 2021 WL 3486897, at *6 (D.N.J. Aug. 9, 2021).

## IV.     CONCLUSION

For the reasons stated above, Berkshire's motion to dismiss is **GRANTED** and Plaintiffs' Second Amended Complaint is **DISMISSED WITH PREJUDICE**. An appropriate Order shall follow.

                    /s/ William J. Martini
            **WILLIAM J. MARTINI, U.S.D.J.**

**Date:  December 14, 2021**